REDMANN, Judge.
Defendant board appeals from a district court judgment on trial de novo which reversed the board’s decision suspending plaintiff’s hard-liquor license for violation of R.S. 26:88 subds. (3) and (ll).[1]
We conclude that a statute providing “No person * * * shall permit”[2] (described acts on licensed premises) is not obeyed by mere inaction (as is, e. g., “No person shall discharge firearms”), but because it prohibits the allowing or tolerating, requires affirmative action (or readiness) to prevent (or at least swiftly halt), the occurrence of the described acts on the *545 licensed premises. The issue here is accordingly whether plaintiff took reasonable affirmative action to prevent, or maintained some reasonable system to halt, the proscribed acts, despite the fact that he failed to achieve the desired result of not having underage youths playing pool (or loitering).
The basic facts are that four police officers entered plaintiff’s establishment and found four youths, all under 18; two were playing pool and two were not.
In our judgment these facts convict plaintiff of having “permit[ted] the playing of pool” in violation of R.S. 26:88 subd. (11), in the absence of a showing of some unusual circumstance which might excuse the licensee from responsibility. To hold that a licensee could escape censure under these circumstances by a showing that he did not have actual knowledge would give the board an impossible burden of proof and render subd. (11) meaningless.
We observe that subd. (3) requires one not permit under-eighteens “to visit or loiter”, which seems less than requiring the licensee to post a guard at his door as if “to enter” were the unpermittable. In subd. (3) the unpermitted act may be itself indefinite, and subject to different interpretation under differing circumstances, since the licensee is not required to prevent simple entry.
But in subd. (11) the unpermittable is “playing of pool” by an under-eighteen, which, in our judgment, is an act not indefinite, and not subject to different interpretations.
Thus the mere presence of an under-eighteen might not establish a prima facie case of violation of subd. (3), but the mere presence of pool-playing by an under-eighteen does establish, prima facie, that subd. (ll)’s prohibition has not been obeyed.
Since no door-guard is obligatory an underage youth’s running in, picking up a pool cue and completing one shot might not prove that the licensee “permitted” underage pool-playing. But if subd. (11) means anything it means that the licensee must swiftly and effectively stop the pool-playing.
Here the licensee had taken charge of his premises from his employee-brother ten or 15 minutes before the police entered and found the minors playing. All ten pool tables were already in use and no one paid up and left a vacant table while he was there, the licensee testified. While he argues ignorant innocence because one pool table is not wholly visible from behind the bar where he was, he had to pass that table to enter and his brother had to pass it to leave the premises. Furthermore, his obligation to not permit underage pool-playing is not satisfied by ignoring a pool table in a corner he cannot see; that circumstance would suggest even greater care as to that table, with frequent checks and the like.
The evidence is clear that the underage youths were playing pool without interference before the police stopped them. The only testimony by the licensee of any effort to prevent such acts was of observation of young-looking players during clean-up rounds every 30 to 45 minutes (and this testimony was somewhat rebutted by that of one 16-year-old who testified he had been there six times in three or four months, and by that of another who had been there on one earlier occasion and was never asked for age proof). It must be added that the entrance is clearly marked “No Minors”. In our judgment this is inadequate compliance with the licensee’s statutory obligation not to permit underage pool-playing, which occurred not because a reasonable compliance with the statutory obligation failed due to circumstances beyond the licensee’s control but rather because the licensee did not reasonably comply with but violated his statutory obligation.
The judgment appealed from is reversed and the decision of the board is reinstated *546 and made the judgment of this court, with the seven-day suspension of State Liquor Permit No. 7454 to begin at noon on the first and to end at noon on the eighth day following the day on which this court’s judgment becomes final. Gordon Smith is to pay all costs.
Reversed; decision of board reinstated.

. No person holding a retail dealer’s permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:
(3) Invite or permit any person under the age of eighteen years to visit or loiter in or about any place where alcoholic beverages or beer are the principal commodities sold or handled.
(11) Permit the playing of pool or billiards by any person under eighteen years of age, or permit such a person to visit or frequent the licensed premises, operating a pool or billiard hall.

. Webster’s New International Dictionary, 2d ed., defines the transitive verb permit:
1. To allow the act or existence of; to tolerate; to consent to expressly or formally; to grant leave for or the privilege of; as, to permit smoking, an appeal to a higher court, or access to one’s library.
2. a To grant (one) license or liberty; to authorize; to give leave; — usually followed by an infinitive; as, to permit him to answer; to permit oneself to become extravagant.